**In the Matter of LACLEDE
SCHOOL OF LAW.**

No. 66168.

Supreme Court of Missouri,
En Banc.

April 30, 1985.

Rehearing Denied May 29, 1985.

## ORDER

The application of Laclede School of Law for modification of that part of this Court's Rule 8 which limits admission of the Bar of Missouri to those persons who are graduates of "a law school approved by the Section of Legal Education and Admission to the Bar of the American Bar Association," and for provisional accreditation, is now taken up by the Court.

After consideration by the Court of the Report of the Committee of Inquiry appointed pursuant to the Court's Order of April 20, 1983 and of the briefs of the applicant and other interested parties, and after hearing oral argument, the Court concludes that no change shall be made in the rule and that the application shall be denied.

WELLIVER, HIGGINS, BILLINGS and BLACKMAR, JJ., concur.

RENDLEN, C.J., and GUNN, J., dissent.

DONNELLY, J., not participating.

## APPLICATION FOR ACCREDITATION

BLACKMAR, Judge.

Laclede School of Law is incorporated under Missouri law. It offers a legal curriculum leading to a J.D. degree, but it is not accredited by the Section on Legal Education of the American Bar Association. Under our Rule 8.03, its graduates may not sit for the Missouri Bar Examination.

Laclede now seeks an amendment to Rule 8.03 so that it may be accorded provisional accreditation in Missouri. It points to the unavailability of evening legal education in Missouri since Saint Louis University phased out its evening division program in the 1970's, and argues that those who must support themselves by working should be able to study for and be admitted into the legal profession. It argues that its faculty and curriculum are adequate to train its students to become lawyers. It offers to discontinue its operation: (1) if one of the accredited schools in Missouri offers evening courses, and (2) if its graduates fail to achieve a sufficient passing rate on the Missouri Bar Examination.

The American Bar Association, for many years, has undertaken the accreditation of law schools. Missouri has accepted it as the sole accrediting agency. Laclede, in several respects, does not meet A.B.A. objective standards. It argues, however, that full compliance with these standards is not essential to an adequate legal education, and that its curriculum is satisfactory.

We are aided in our efforts by a Board of Inquiry appointed by court order, consisting of one educator (the Chairman), three lawyers,[1] and a State Representative who is not a lawyer. This Board, by four-to-one vote, concluded that Laclede had an adequate faculty and curriculum so that it should be accredited provisionally, in spite of its failure of compliance with ABA standards.

It is easy to say in the abstract that evening education should be available to those who want to become members of the Bar but cannot afford to attend law school full-time. The problem is made more severe by reason of cutbacks in government scholarship and guaranteed loan funds. Many a promising legal career, no doubt, is nipped in the bud because of financial pressures. Laclede has not attracted a large number of students, but it may be reasonably assumed that more would enroll if it were to obtain accredited or provisionary accredited status. But no accreditation should be granted unless we are convinced that the institution is educationally adequate.

Recent history has demonstrated a continuing attempt at upgrading the quality of legal education. Most accredited law schools now require each student to have an undergraduate degree. The American Bar Association, as an accrediting agency, has detailed requirements as to faculty, library, and physical facilities. The upgrading of standards is in the public interest. If the present objective requirements are important, then the showing that many outstanding lawyers in past years graduated from law schools which would now be totally unacceptable, or attended no law school at all, does not support an argument for relaxation. The ABA has general acceptance as a professional accrediting agency. Academic accreditation is customarily undertaken by private agencies.[2] The ultimate responsibility of determining who may take the Missouri Bar Examination, however, belongs to this Court, and ABA standards are not immune from our scrutiny.

The members of our Board of Inquiry deserve the thanks of the Court for their efforts. I am frank to say that I have many reservations about the depth of their analysis. They rely to a great extent on a

1. One lawyer initially appointed died after hearing Laclede's presentation but before the Board's report was published. His replacement voted for approval, but expressed reservations.

2. The North Central Association of Colleges and Secondary Schools, a private organization established by its member schools, is the recognized accrediting agency for educational institutions in Missouri.

site inspection team, chosen by them, and consisting of two respected practicing lawyers. There is no input from any experienced legal educator. Only one of the three lawyer members has made an unqualified recommendation for accreditation. But I do not need to discuss all my reservations in depth. I believe that the absence of a full-time faculty presents a fatal obstacle to the approval of the application.

Our order of April 20, 1983, authorizing the Board of Inquiry, directed it to report

"(c) Whether the applicant has sought American Bar Association accreditation and, if such accreditation has been denied ... (ii) what progress has been made toward correcting the conditions which have caused the denial...."

I had assumed that Laclede would provide some suggestion or timetable for compliance or progress toward compliance with the basic ABA standards, with projection of the enrollment required to reach certain goals. Laclede frankly admitted that it had not sought ABA approval because it did not meet ABA standards in several respects and had no prospect of meeting these requirements in the forseeable future. One ABA requirement is that an accredited school have at least six full time faculty members.

Laclede has no full time faculty member. It does not propose to have any.[3] The report of the site inspection team reads as follows:

"With regard to eventually meeting the ABA standards of six full-time faculty members, the self-study and the interviews with the dean indicated that such compliance was not an objective of the school. The dean voiced the belief that a part-time faculty comprised solely of practicing attorneys and active judges is favorable (sic) to the use of the full-time faculty. He further indicated that it was his belief that eventually Laclede School of Law would be in compliance with the ABA standards because those standards, rather than Laclede School of Law, would change."

Laclede's able counsel argues that the distinguished judges and lawyers who teach there can teach as competently as full-time faculty members. It is suggested that the primary reason for having full-time faculty members is so that they will be available to full-time students, and that there would be little reason for having faculty members present during hours when the students are not there. It is also urged on us that the requirement of six full-time teachers is obsolete, in an age in which educational institutions at all levels are making increasing use of adjunct faculty.

These arguments indicate a lack of understanding of the reason for having full-time law teachers. The typical full-time law teacher is an honor graduate, usually of a law school other than the employing school. Some have graduate degrees in law; others have experience in law practice. Each faculty member is expected to select one or more areas of concentration,[4] to maintain familiarity with the literature and evolving case law on that field, and, especially as a condition of obtaining academic tenure, to contribute to that literature. The full-time teacher goes beyond the current case law in offering a critical analysis of the field of concentration.

Some law schools make effective use of adjunct teachers who are full-time judges or lawyers, but only as adjuncts. If the full-time component is in place, then instruction by distinguished adjunct teachers or by beginning full-time teachers is appropriate and valuable. The heart and soul of the law school, nevertheless, is its full-time faculty. I have the greatest regard for the eminent judges and lawyers who teach at Laclede and mean no disrespect in saying that a part-time teacher who is busy with his or her principal occupation cannot main-

---

**3.** Laclede's brief lists 20 faculty members, including six appellate judges, six other judges, and eight practicing attorneys. All are of highest reputation.

**4.** Basic fields of concentration usually include contracts, torts, property, constitutional law, criminal law, remedies, civil procedure, business organization, and taxation.

tain the in-depth study expected of one who devotes full time to teaching.

There may be no magic in the figure six for the full-time faculty. That number might have been suggested in order to provide for a diversity in fields. Laclede has no prospect of having even one full-time teacher,[5] and the Board's suggestion of one full-time faculty member to ensure "continuity" would not accomplish the basic purpose of the full-time faculty standard. I simply cannot accept the proposition that the faculty requirement is not important.

■ Laclede asks that its graduates be permitted to demonstrate their competence by taking the bar examination. I agree with the lawyer who argued for ABA, and with the Chairman of the Board of Bar Examiners, that the successful completion of the bar examination does not conclusively establish one's ability to enter the legal profession. The examination does not cover many important subjects such as taxation. Law school courses should include jurisprudential analysis, which is seldom covered in examinations and in which the qualifications of part-time teachers are suspect. Full time law schools offer moot court competitions, the opportunity to write for law reviews, visits and lectures by well known members of the legal community, and other extra-curricular activities.[6] I am not persuaded that Laclede's students are receiving a legal education which is basically sound and complete. Even though each individual course, taught by a highly regarded lawyer or judge, may be valuable, I am not satisfied that the over-all instructional package is adequate. If this is so, the permission to take the bar examination would not be in the public interest.

I necessarily realize the disappointment which Laclede's graduates, students and faculty must feel in the defeat of their hopes. I can only reply that the students took a risk when they undertook this study. Some expectation may have mounted while this matter was in the course of consideration. Our willingness to consider Laclede's application, at its request, did not give any indication of a favorable conclusion. We would not do our duty if we allow compassion for present students to move us toward a decision which is not in the public interest.

■ My conclusion is that the Laclede operation is basically unsound, and cannot be made sound by any adjustment of the present structure.[7] I see no alternative to unconditional denial of the application. It may be possible to establish a law school in the St. Louis area which will offer evening classes, but, if the school is to operate under private auspices, there must be a financial commitment many times larger than has been suggested to us. The only other alternative is state operation. Perhaps the Board of Curators of the University of Missouri could explore the possibility of establishing such a school at the University of Missouri at St. Louis, and consideration might be given to a consortium with the State of Illinois, which contains a large metropolitan area in greater St. Louis. Laclede students might be offered the opportunity to "quiz out" of courses if an appropriate school were established. But I see no prospect for present action.

■ Counsel urgently ask us to consider the public interest. We have done so. There is no compelling need for additional law graduates. The goal of equal educational opportunity is important, but satisfactory legal education is *sine qua non.*

---

5. A full-time law teacher with sound academic credentials but no experience in teaching or practice may expect a starting salary of $30,000 in Missouri schools, and periodic raises would be expected.

6. The case of *Sweatt v. Painter,* 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114 (1950), is not wholly on point, but it contains an interesting comparison

of an established full-time law school and an ad hoc school.

7. I have substantial reservations about the library and physical facilities, and cannot agree that the ABA standards are immaterial. I also have reservations about the composition of the student body, and academic standards.

For the reasons assigned, I vote to deny the application for rule change.

WELLIVER, HIGGINS and BILLINGS, JJ., concur.

RENDLEN, Chief Justice, dissenting.

I respectfully dissent from the Order and Memorandum Opinion of this Court denying the application of Laclede School of Law for modification of this Court's Rule 8 and for provisional accreditation.

Laclede School of Law was thoroughly evaluated by the Board of Inquiry and its site evaluation team. The Report of the Board of Inquiry, partially in reliance on the site evaluation, concludes:

1. That, based on said site evaluation, the curriculum of Laclede School of Law is comparable to the curricula of law schools accredited by the American Bar Association.

2. That, based on said site evaluation, the school presently has an adequate faculty in terms of quality of instruction. The Board has no way of knowing whether the retention of such a faculty can be insured and would recommend that the faculty have at least one full-time member.

3. That the school has not sought accreditation by the American Bar Association and does not anticipate doing so in the foreseeable future for the reason that it does not have six full-time faculty members, a full-time librarian, a complete law library, and the physical facilities required by the American Bar Association accreditation standards. According to the site evaluation team, the quality of legal education is not substantially impaired for failure to meet these standards because of the quality of the faculty members and access to the law libraries in the St. Louis County Courthouse, the St. Louis Civil Courts Building, and the Missouri Court of Appeals.

4. That, based on said site evaluation, the school has a student body consisting of persons who could be expected to become competent members of the bar. The Board was unable to determine anything specific in the school's admission policies designed to exclude poorly qualified applicants.

5. That, based on said site evaluation, the school's standards of grading, attendance, retention, and graduation are comparable to those of law schools accredited by the American Bar Association.

6. That it is in the public interest that accreditation be granted.

7. That, based on said site evaluation, the facilities and resources of the school are adequate under the school's present circumstances.

The resolution of the Board, based upon the above findings, recommending that provisional accreditation be granted for the 1984–85 and 1985–86 academic years, should be adopted by this Court. The Board's recommendation that the faculty have at least one full-time member should also be incorporated into this Court's provisional accreditation.

Because the Board and its site evaluation team have concluded that the curriculum of Laclede School of Law is comparable to the curricula of ABA accredited schools and that the school presently has an adequate faculty in terms of quality of instruction, I cannot agree that the absence of full-time faculty presents a fatal obstacle to the approval of the application, particularly when any perceived deficiency can be rectified by adopting the Board's suggestion that the faculty have at least one full-time member. Indeed, this Court could grant the provisional accreditation attaching any conditions it finds necessary and reasonable. Faculty may be the heart of an educational institution; however, equally essential to an institution's vitality and mission is its willingness to undertake critical self-evaluation and periodic review. Laclede School of Law has demonstrated its willingness to comply with this Court's mandates.

The application for provisional accreditation is supported, therefore, not only by the site evaluation and Report of the Board of Inquiry but also by Laclede's willingness to

abide by certain conditions for obtaining the provisional accreditation. The school offers to discontinue its operation (1) if one of the accredited schools in Missouri offers evening courses, and (2) if its graduates fail to achieve a sufficient passing rate on the Missouri Bar Examination. Because the school is willing to undergo these conditions and any others imposed by this Court, modification of our Rule 8 and provisional accreditation should be granted so as to provide an additional empirical test of the soundness and capability of the Laclede School of Law to adequately train lawyers.

Finally, the most compelling rationale for granting the provisional accreditation is the demonstrated public need for a law school to serve those aspirants who must work full time to finance their legal education or to support themselves or their family. Laclede School of Law was established to serve only such students and the school fills the void existing in the St. Louis metropolitan area because no other law school offers an evening division. It is not enough to say that financial constraints may prohibit an otherwise qualified and eager student to pursue training in the law and a legal career. It is in the public interest that such students be permitted to study the law and that accreditation be granted. The reasons are two-fold: (1) Because the public desires and deserves to be served by those from all walks of life trained in the law who bring to the profession the insights and experiences of their lives and work in other and related fields and (2) because capable students have attested that without the existence of the Laclede School of Law evening curriculum they could not afford to attend law school. It is worth noting (as did the site evaluation team) that at least two students at Laclede were admitted, and attended, Washington University School of Law but were forced to drop out for economic reasons.

In conclusion, because the public interest requires it and because the curriculum of Laclede is comparable to that of ABA approved schools, the application for provisional accreditation should be granted.